UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  | PRISONER |
|---|---|---|
| MICHAEL MORIARTY |  : | CIVIL NO. 3:02CV1662 (RNC)(DFM) |
| V. | : |  |
| RICHARD NEUBOULD AND STEVEN STEIN | : | JULY 12, 2004 |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
### THEIR MOTION FOR SUMMARY JUDGMENT

**I.    FACTS AND BACKGROUND**

Plaintiff, a federal inmate proceeding pro se, originally brought this action pursuant to 42 U.S.C. § 1983 against Dr. Steven Stein and Richard Neubould, members of the medical staff of the Connecticut, Department of Correction. Plaintiff alleged that the defendants were deliberately indifferent to his medical needs for a migraine headache condition and an acid reflux condition in violation of the Eighth Amendment. In May, 2003, pursuant to Fed.R.Civ.Proc., 12(b)(6), defendants filed a Motion to Dismiss the plaintiff's action in its entirety for failing to state a claim and, on the basis of qualified immunity. By Ruling and Order dated February 10, 2004, the Court granted the defendants' motion in part and denied defendants' motion in part. Ruling and Order (RNC, February 10, 2004). Specifically, the Court granted defendants' motion with respect to all claims against defendant Neubould; all claims concerning the plaintiff's acid reflux condition and most of the claims concerning his migraine condition. (Id., pp. 6-7). The only claim remaining is against Dr. Stein and is premised on plaintiff's need for medical treatment for migraine headaches during the period from April 10, 2002 to April 24, 2002.

Pursuant to Fed.R.Civ.Proc. 56, the defendants now move for summary judgment on that remaining claim.[1]

## II. MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment "… if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. A "material fact" is one whose resolution will affect the ultimate determination of the case. Id. In further comment regarding the use of summary judgment, the Supreme Court has stated:

> summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules, as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.

Celotex, Corp. v. Catrett, 477 U.S. 317, 327 (1986).

Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," Capital Imaging Assocs. v. Mohawk Valley medical Assocs., 996 F.2d 537, 541 (2d Cir.), cert. denied, 510 U.S. 497 (1993), and to "isolate and dispose of factually unsupported claims." Celotex Corp., at 323-324.

---

[1] By motion dated June 21, 2004, the plaintiff attempts to move for summary judgment as well. By separate filing, the defendants have opposed this motion.

2

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  Those facts that are material fact will be identified by the substantive law governing the case.  Anderson, 477 U.S. at 248.  Once the moving party meets its burden, the burden shifts to the non-moving party.

To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in their complaint, nor rely on "mere speculation or conjecture" to overcome a motion for summary judgment.  Knight v. Fire Insurance Company, 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).  The evidence must be presented in a manner consistent with its admissibility at trial.  See First National Bank Co. of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the Court properly relied upon documents and exhibits identified by affidavit).  Unsworn statements of the parties, letters addressed to the litigants from third persons, and hearsay which does not fall under one or more exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not be properly considered.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598 2 L.Ed.2d 142 (1970); Beyene v. Coleman Security Service, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stansy Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).  Moreover, plaintiff must point to "specific facts showing that there is no genuine issue for trial."  Rule 56(e); Anderson, 477 U.S. at 248.  Plaintiff must also produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial.  Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).

**III.     EIGHTH AMENDMENT – DELIBERATE INDIFFERENCE**

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court recognized that the government has an obligation to provide medical care for those it incarcerates and held that a prisoner may have a claim for failure to do so under the Eighth Amendment.  To prevail on an Eighth Amendment claim involving prison medical care, an inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Id.  A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  (Id. at 104-05).  Mere negligence will not support a Section 1983 claim, the conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud v. Delaney, 677 F.Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).

There are both subjective and objective components to the deliberate indifference standard.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  To satisfy the objective test, the serious medical need must be "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Id., see also, Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991).  To meet the subjective test, the charged official must act with a sufficiently culpable state of mind.  Wilson, 501 U.S. at 298, 111 S.Ct. at 2324.  This "does not require 'conduct undertaken for the very purpose of causing harm.'"  See Jolley v. Coughlin, 76 F.3d 48 481 (2d Cir. 1996).  Rather, deliberate indifference exists when a prison official "knows that an inmate faces a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970, 1984, 128 L.Ed. 811 (1994).

Moreover, it is well established that a difference of opinion as to the appropriate medical care for an inmate will <u>not</u> form a basis for a finding of deliberate indifference. <u>Estelle</u>, <u>supra</u>, at 106; <u>Ross v. Kelly</u>, 784 F. Supp. 35, 44-45 (W.D.N.Y.), <u>aff'd</u> 970 F.2d 896 (2d Cir.) (Prison officials have broad discretion to determine the nature and character of medical treatment afforded to inmates and mere disagreement with prison officials about what constitutes appropriate medical care does not state a cognizable claim under the Eighth Amendment). In the present case, the plaintiff fails to satisfy the deliberate indifference standard to state a viable claim under the Eighth Amendment.

The uncontroverted evidence pertaining to the very limited time period from April 10, 2002 to April 24, 2002 clearly demonstrates that the plaintiff simply disagrees with the course of treatment prescribed by Dr. Stein and accordingly, fails to state a claim for deliberate indifference. First and foremost, while the plaintiff alleges that he was not seen by Dr. Stein during this time period, the evidence demonstrates that the plaintiff was seen, and treated, by Dr. Stein on April 17, 2002. (Clinical Record; Stein Affidavit). On April 10, 2004, the plaintiff was discharged from Hartford Correctional Center to immigration officials. (Clinical Record, April 17, 2002). He appeared in Court, was re-arrested, and brought to Bridgeport Correctional Center pending a court date in May. (<u>Id.</u>). At Bridgeport Correctional Center, an intake health screening is typically completed for *new admittees* into the correctional system at which point a new medical file is created. (Stein Affidavit, para. 15). If an inmate is transferred within the correctional system, a transfer summary document is utilized and the inmate's most current medical file is transferred from the other facility. (<u>Id.</u>, para. 16). In this case, due to his discharge from Hartford, the plaintiff was treated as a new admittee into the system even though he had been incarcerated at Hartford one day prior. (Stein Affidavit, para. 17). On the afternoon

5

of April 11, 2002, the plaintiff was placed into the general population at Bridgeport Correctional Center. (Clinical Record, April 11, 2002). The plaintiff alleges that he sent a couple of sick call requests to Dr. Stein, however Dr. Stein did not receive or process responses to inmate's sick call requests (Stein Affidavit, para. 8). The nursing staff at Bridgeport Correctional Center received and processed all inmate requests for sick call. (Id., para. 8). On a daily basis, Dr. Stein was advised by nursing staff which inmates he was to see on that day. (Id., para. 8). Indeed, defendant Stein had no contact with the plaintiff at Bridgeport Correctional Center until April 17, 2002. (Id., para. 7). On April 17, 2002, defendant Stein saw the plaintiff and examined him for complaints of migraines. (Clinical Record, April 17, 2002; Stein Affidavit, para. 7). Dr. Stein had seen the plaintiff at Bridgeport Correctional Center several months prior to this examination but did not have a specific recollection as to any particular health need. (Stein Affidavit, para. 5). Dr. Stein found that the plaintiff was not in any acute distress. (Id.).

Due to the plaintiff's discharge from Hartford and subsequent re-admission to Bridgeport, on April 17, 2002, defendant Stein did not have plaintiff's medical file or his physician's orders from Hartford. (Stein Affidavit, para. 17). Dr. Stein gave the plaintiff Motrin and called Hartford and arranged for the plaintiff's medical chart to be sent to Bridgeport. (Clinical Record, April 17, 2002; Stein Affidavit, para. 7). The plaintiff was seen on April 24, 2002 and prescribed Indural, a migraine medication. (Medication Administration Record, April, 2002).

Based on the foregoing, it cannot be reasonably argued that defendant Stein acted with deliberate indifference to the plaintiff's medical needs during the period of time from April 10 to April 24, 2002. The defendant did not even know that the plaintiff was incarcerated at Bridgeport Correctional Center until April 17, 2002. On that day, the defendant examined the plaintiff and--despite plaintiff's requests for medication--did not find him to be in acute distress.

6

Accordingly, the defendant prescribed Motrin for the plaintiff and took affirmative steps to access the plaintiff's medical file from Hartford.  One week later, the plaintiff was prescribed a migraine medication.  At the very most, the plaintiff has asserted a disagreement with Dr. Stein's cautious approach to providing medication to the plaintiff for his migraine complaints.  There is absolutely no evidence that Dr. Stein knew of, and disregarded the plaintiff's medications.  Moreover, there is no indication that the plaintiff suffered any adverse effects from the defendant's cautious approach to medication.

Finally, even if the Court indulges in the unwarranted assumption that defendant Stein somehow violated the plaintiff's constitutional rights, defendant Stein would still be entitled to summary judgment on the basis of qualified immunity.  In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence.  Saucier v. Katz, 121 S.Ct. 2151, 150 L.Ed.2d 272, 281 (2001).  Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  Id.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526, 86 L.Ed.2d 411, 105 S.Ct. 2806 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if an case is erroneously permitted to go to trial."  Ibid.  As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227, 116 L.Ed.2d 589, 112 S.Ct. 534 (1991) (per curiam).

"Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of

7

the action … assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639, 97 L.Ed.2d 523, 107 S.Ct. 3034 (1987) (quoting Harlow, 457 U.S. at 818-19).

Determining the objective legal reasonableness of a specified action depends upon the level of generality with which applicable legal rules are defined. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. Thus, in the context of an illegal police search, the Anderson Court inquired "whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officer possessed." Id. at 641.

In this context, Dr. Stein would be entitled to qualified immunity if he can demonstrate that it was objectively reasonable for him to believe that the medical treatment he provided to the plaintiff during the relevant time period did not violate a clearly established constitutional right. Based on the uncontroverted facts, it is evident that this is the case. On April 17, 2002, the plaintiff was not in distress, yet was requesting prescription medication from the defendant who did not have immediate access to the plaintiff's medical file. The defendant chose a cautious and prudent approach of providing the plaintiff an alternative and safer medication (Motrin) and taking affirmative steps to access the plaintiff's medical file. Accordingly, the defendant would be entitled to qualified immunity.

|  |  |
|---|---|
|  | DEFENDANTS<br>Richard Neubould and Steven Stein<br><br>RICHARD BLUMENTHAL<br>ATTORNEY GENERAL |
| BY: | \_\_\_\_/s/_____<br>Matthew B. Beizer<br>Assistant Attorney General<br>110 Sherman Street<br>Hartford, CT  06105<br>Federal Bar #ct16304<br>E-Mail:  matthew.beizer@po.state.ct.us<br>Tel.: (860) 808-5450<br>Fax: (860) 808-5591 |

**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 12th day of July, 2004:

Michael Moriarty, Inmate No. 14634-014
Federal Correctional Institution
P.O. Box 1000
Otisville, NY  10963

_____/s/_____
Matthew B. Beizer
Assistant Attorney General